## Case No. 14,744.

### UNITED STATES v. CASHIEL.

[1 Hughes, 552.] 1

District Court, D. Maryland. 1863.

CRIMINAL LAW—TWICE IN JEOPARDY—ACQUITTAL BEFORE COURT-MARTIAL.

An acquittal before a court-martial cannot be pleaded in defence of an indictment in a court of law; even though the offence charged in either case be substantially the same.

In the month of June, 1863, the accused [Hazel B. Cashiel] had at pasture on his farm, in Montgomery county, Md., some five hundred head of cattle, which, with some

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

five hundred others, belonging to the United States, were driven away, on the morning of the 28th of that month, for their protection from the Confederate cavalry, then approaching. Soon thereafter, the invading forces riding up to where several persons, including the accused, were standing, demanded in what direction the cattle had gone. One person pointed them in a direction opposite to the true one. In a few minutes one of the cavalrymen returned from the pursuit, and repeating the demand, the accused is alleged to have indicated to him the road which the cattle had taken, their number, and the fact that they were driven without any guard except their ordinary herdsmen. This information did not result in any benefit to the enemy, as the cattle were driven safely within the Federal lines. Shortly after this occurrence Mr. Cashiel was arrested, taken to Washington, and there tried by a court-martial, on the charge of conveying intelligence to the enemy, contrary to the 57th article of war. The court which tried him, after maturely considering the evidence adduced, found the accused of the specifications and charge guilty, but say "that, although the accused answered certain questions put by rebels, which, in a strict literal sense conveyed intelligence to the enemy, it has not appeared in evidence that the information was volunteered, nor does the court perceive that such intelligence was given with that criminal design which the law contemplates as the animus of a breach of the 57th article of war; and the court, therefore, affixes no penalty to the offence beyond an admonition, that in future he will be more on his guard in answering inquiries addressed to him by an enemy." The secretary of war approved of the findings of the court, upon the specifications and charge, and disapproved of the sentence; and, after a review of the testimony and proceedings of the court, in an order from the war department, dated July 29th, 1863, says: "Although the accused has been relieved of all responsibility under the 57th article of war, he is still liable to be prosecuted under the 2d section of the act to suppress insurrection, etc., approved July 17th, 1862 [12 Stat. 589], for giving aid and comfort to the rebellion, and that the prosecution for this offence may be proceeded with he will be handed over to the civil authorities." After the passage of this order Mr. Cashiel was again arrested, and an indictment afterwards found against him in the United States district court of Maryland, September term, under the act of July, 1862. When the case was called for trial at the present term of the court, the counsel for Mr. Cashiel put in the plea of autrefois convict, averring that as he had been before tried by the proper tribunal, he could not be again impeached and put in jeopardy for the same offence. To this plea the United States demurred, and the questions involved in the case were

argued by William Schley, Esq., of Baltimore, and Charles Abert, Esq., of Montgomery county, for the traverser, and William Price and Nathaniel L. Thayer, Esqs., for the government.

GILES, District Judge. The 2d section of the act of 17th of July, 1862, under which the traverser stands indicted, is as follows: "That if any person shall hereafter incite, set on foot, assist or engage in any rebellion or insurrection against the authority of the United States or the laws thereof, or shall give aid or comfort thereto, or shall engage in or give aid and comfort to any existing rebellion or insurrection, and be convicted thereof, he shall be punished by imprisonment for a period not exceeding ten years, or by a fine not exceeding ten thousand dollars, and by the liberation of all his slaves, if any he have; or by both of said punishments, at the discretion of the court." The trial and conviction which forms the subject-matter of the plea filed in this case, was had before a general court-martial, held in the city of Washington, in pursuance of orders from the war department. The charge against the traverser before that court was for a violation of the 57th section of the article of war, which article is as follows: "Whoever shall be convicted of holding correspondence with, or giving intelligence to the enemy, either directly or indirectly, shall suffer death, or such other punishment as shall be ordered by the sentence of the court-martial." See act of 1806 (2 Stat. 366). Two questions have been presented in the argument of this case: 1st. Had the court-martial, whose record is referred to in the plea filed in this case, jurisdiction of the offence there charged and over the person of the traverser? And if so, 2d. Is the said charge the same offence (within the meaning of the fifth amendment) to the constitution of the United States) for which the traverser now stands indicted?

I shall discuss the second question, for if that be answered in the negative, it overrules the plea filed in this case; and it becomes unnecessary to consider and decide the first. They have both been argued with great ability, and the first question, touching the jurisdiction of courts-martial, presents at the present time a painful interest. It is a question with which our previous reading had not made us familiar, for, until the present widespread insurrection, the administration of our general government had been known to us only by the exercise of its peaceful civil powers, and by its laws executed and enforced by the national judiciary. But our constitution was made for all time—a time of war as well as a time of peace; and what is the extent and limit of the war power it imparted to the government, presents a problem of no easy solution, but one which is now engaging the attention and careful consideration of the statesmen and jurists of the land.

As the view I take of this case relieves me from the consideration at present of so grave a question. I will only add, before I pass from it, that the more I study the constitution of our country the more am I impressed with the wisdom, the forethought, and the experience of the great men who framed it. And my firm conviction is, that our only pathway of safety and hope for the future lies in a strict observance of all its provisions. Now, what is meant by the word "offence," as used in the fifth amendment to the constitution? This is settled by the supreme court in the case of Moore v. Illinois, reported in 14 How. [55 U. S.] 17, where Justice Grier says, in delivering the opinion of the court, "An offence in its legal signification means the transgression of a law."

In this case we have two laws—the articles of war, as contained in the act of 1806, and the law of 1862, which I have before cited—and their provisions are different. The 57th article of war punishes the holding of any correspondence or the giving of any intelligence to the enemy. For in a time of war (when alone this article operates) it might be prejudicial to the discipline and good order of the army that any correspondence should be held by any of its members with the enemy, although the intelligence given might be in no manner in furtherance of that enemy's views and designs. Whereas, no conviction could be had under the act of 1862, unless the intelligence given was of such a character as to give aid and comfort to those engaged in the insurrection. It might very well be, then, that facts which would warrant a conviction under the 57th article of war could produce no such result in an indictment under the 2d section of the act of 1862. And many facts would warrant a conviction under the law of 1862 which are not punishable under the 57th article of war. These are laws to be administered by different tribunals, and they create distinct offences. And there was no law of the United States punishing by indictment corresponding with the enemy or giving them intelligence (unless it amounted to treason under the act of 1790 [1 Stat. 112], or as giving aid and comfort to the rebellion under the act of 1862) until the act of the 25th of February, 1863 [12 Stat. 696], and that only punishes correspondence, either written or verbal, where it is carried on with "intent to defeat the measures of the government, or to weaken, in any way, their efficacy." When congress, in 1806, was framing the articles of war, they provided, by the 33d article, that whenever an officer or soldier should be accused of a capital crime, or of having committed any offence against the person or property of any citizen, such as is punishable by the known laws of the land, he should be delivered over to the civil magistrate for punishment. And although by article 9 they provided a punishment for an officer or soldier striking or drawing a weapon upon, or offering any violence to his superior officer, it could

not be contended that this provision debarred the civil courts from punishing the offence as an assault and battery. And although the act of 1806 does not contain the provision to be found in the mutiny acts of Great Britain, "That nothing in it shall be construed to exempt any officer or soldier whatsoever from being proceeded against by due course of law," yet it appears to me that that is its true construction; that the military law, as it exists in the United States, is an exceptional code, applicable to a class of persons in given relations, but not abrogating or derogating from the general law of the land, but that the latter is left in full force and virtue. Tytler, in his treatise on Military Law, says: "The martial or military law, as contained in the military law and articles of war, does, in no respect, either supersede or interfere with the civil and municipal law of the realm." He is an Englishman, and treating of the laws of that country. But what say the two most approved writers on military law in this country? Benet, on page 100 of his treatise, says: "A former acquittal or correction of an act by a civil court, is not a good plea in bar before a court-martial on charges and specifications, covering the same act." And De Hart, on page 140, says: "A former acquittal or conviction pleaded, must have reference to a trial by a court-martial. The same acts, as they may offend against the rights of private persons, may also violate the proprieties of military discipline, and as such may be investigated by both civil and military courts. This is a principle perfectly well established in the military service, and has been acted upon and approved by the highest authority." And both these accomplished writers cite the case of Captain Howe. In May, 1842, Captain Howe, of the 2d dragoons, was tried upon a charge for "conduct prejudicial to good order and military discipline," in having beaten or caused to be beaten, in a cruel and inhuman manner, a private of his company. Upon arraignment, Captain Howe pleaded, in bar of trial, that he had been tried and acquitted for the said act upon an indictment for manslaughter in the civil court. But the court would not admit the validity of such plea, and proceeded to trial. Captain Howe was convicted upon the charge and sentenced to be suspended from rank, pay and emoluments for twelve months. The proceedings and decision of the court were approved and confirmed by the war department, by general order No. 34, in 1842. John C. Spencer, of New York, was then secretary of war, himself a lawyer of considerable reputation in his day. Now the civil court before whom Captain Howe had been tried and acquitted was not, as the learned counsellor for the traverser supposed, a court of a different sovereignty, a court of a state; but Florida was then a territory, and the trial took place before the superior court for the territory of East Florida, a court established by congress by the act of May 26th, 1824 [4 Stat. 45].

The judge, district attorney and marshal of said court were appointed by the president, by and with the advice and consent of the senate, and their salaries were paid out of the treasury of the United States. It was a court whose only power was derived from the authority of the United States, and which possessed the usual jurisdiction belonging to the district and circuit courts of the United States, in addition to a jurisdiction to administer the local laws of the territory of Florida. And the opinion of Mr. Legare, the then attorney-general (one of the most accomplished lawyers of the day), sustained the course of the court-martial in this case. It is therefore an authority entitled to great respect. It was not until 1845 that Florida was admitted into the Union. If this be a sound law, then it must follow that an acquittal before the court-martial could not be pleaded to an indictment before the civil court. And, as the supreme court say in the case [Moore v. Illinois] 14 How. [55 U. S.] 17, "it cannot be truly averred that the offender has been twice punished for the same offence, but only that by one act he has committed two offences, for each of which he is justly punishable." The great principle that in the administration of criminal justice no person should be twice put in jeopardy of life or limb for the same offence is much older than our constitution. It existed as a fundamental rule of the common law from a very early period, and is recognized by all English writers on common law. But it is limited to forbid a second trial for one and the same offence. Blackstone (Comm. vol. 4, p. 336), says, "that the pleas of autrefois acquit and autrefois convict must be upon a prosecution for the same identical act and crime." And although an acquittal on an appeal was a good bar to an indictment, yet he informs us on page 313 that an appeal was a prosecution for some heinous crime, demanding punishment on account of the particular injury suffered, rather than to vindicate the public justice. The view I take of the provision in the fifth amendment to the constitution does not, therefore, conflict with this humane principle of the common law. Under each, a former trial, to be a bar, must be a trial for the same identical offence, or, in other words, for the transgression of the same law. As opposed to this view, I have found but two authorities, a dictum of Justice Woodbury, in the case of Wilkes v. Duncan, 7 How. [48 U. S.] 123, and a note on page 341, 1st volume of the 9th edition of Kent's Commentaries. The case in 7 How. [48 U. S.] was an action of trespass, brought by a marine against Commodore Wilkes, for some punishment inflicted on plaintiff while on board one of the vessels of the exploring expedition. A court-martial which was convened after the return of the expedition had acquitted the defendant of this charge. On the trial of this case in the court below the record of the proceedings of the court-martial had been offered as evidence, but rejected by the court. The pro-

priety of this rejection having been considered by the supreme court, Justice Woodbury, in delivering the opinion of the court. says: "We think that such proceedings were not conclusive on the plaintiff here, though a bar to subsequent indictments in courts of common law for the same offence." Now no such point was presented in the case, and no contingency could ever arise as to crimes committed on a ship-of-war. for the reason I shall state in reviewing the other authority. I have very great respect for the memory of Judge Woodbury, whose judicial life was illustrated by great legal learning and patient, untiring industry, but the language I have quoted was an obiter dictum, and is overruled, I think, by the subsequent decision of the supreme court to which I have referred. The commentator in Kent's Commentaries discusses the proposition that the district and circuit courts of the United States have no criminal jurisdiction but what is expressly conferred upon them by statute, and have not, therefore, any jurisdiction over offences committed on board of one of our national ships-of-war, as no such jurisdiction is given by any statute. Judge Betts so held in the Case of Captain Mackenzie [Cases Nos. 15,620 and 15,-691], and that the jurisdiction of the naval court-martial in his case was exclusive, he being then on his trial before a naval court-martial for murder on board the United States sloop-of-war Somers. The commentator goes on to say, "If they (the civil courts) had jurisdiction, an acquittal by a court-martial would be a bar to any criminal proceeding in any other court." But he cites no authority to sustain this position; and as no notice is made of the decision in 14 How: [55 U. S. 17], I think the note must have been written before that decision was made by the supreme court. As instances in which a man may be punished twice for the same act where it constitutes two offences, I cite the case of General Houston, who, having assaulted a member of the house of representatives, was punished by the house for the contempt. and was subsequently indicted and convicted for the same assault in the criminal court in the District of Columbia [Case No. 15,398]. The opinion of Mr. Benjamin F. Butler, the then attorney-general, was taken upon the subject, and he held the subsequent trial and conviction legal. In his opinion he says: "The act committed by General Houston was one and the same, and it constituted but one indictable offence, and he was liable therefore to only one conviction on indictment." But it was not the same offence for which he was punished by the house of representatives.

I also cite the case of State v. Yancy, reported in 1 N. C. Law Repos. 519. In this case it was decided that for an assault committed in the presence of the court, and for which contempt the court punished by a fine, the party could be afterwards tried for the assault and battery. It appears to me, therefore, that before I can decide a charge to be

"the same offence" within the meaning of the fifth amendment to the constitution, it must appear that the offence was the same in law and in fact. In the case at bar, the traverser is charged with a violation of the act of 1862 by giving aid and comfort to those in rebellion. The charge on which he was tried before the court-martial was for giving intelligence to the enemy, in violation of the articles of war. I consider that identity wanting which would make his trial on this indictment a violation of the constitution of the United States. The demurrer is sustained, and the traverser's plea of autrefois convict is overruled, with leave to him to plead over.